**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RESCUECOM CORPORATION,**

                                        **Plaintiff,**

                        **v.**                                    **5:05-CV-1330**
                                                                            **(FJS/GJD)**
**MICHAEL MATHEWS,**

                                        **Defendant.**
_____

**APPEARANCES**                                    **OF COUNSEL**

**OFFICE OF CORPORATE COUNSEL**          **EDMUND J. GEGAN, ESQ.**
**FOR RESCUECOM CORP.**
2560 Burnet Avenue
Syracuse, New York 13206
Attorneys for Plaintiff

**OBERMAYER REBMANN MAXWELL**        **ANGELA L. BAGLANZIS, ESQ.**
**& HIPPEL LLP**                                    **EDMOND M. GEORGE, ESQ.**
One Penn Center, Suite 1900                  **D. ALEXANDER BARNES, ESQ.**
1617 JFK Boulevard
Philadelphia, Pennsylvania 19103
Attorneys for Defendant

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Currently before the Court are Plaintiff's motion for a preliminary injunction enforcing

the non-compete provisions of its Franchise Agreements with Defendant and its motion to hold

Defendant in contempt of Court for violating a state court temporary restraining order.  In

addition, Defendant has filed a motion for a preliminary injunction restraining Plaintiff from

enforcing those same non-compete provisions against him.[1,2]

## II. BACKGROUND

Plaintiff, a New York corporation, is exclusively engaged in the offering and selling of franchised computer sales and services businesses nationwide and has more than ninety such franchises throughout the country.  Defendant, a resident of New Jersey, is a former corporate franchisee of Plaintiff, who purchased two separately-issued franchises, one on April 25, 2004, and one on or about January 25, 2005, for sales territories in southern New Jersey and southeastern Pennsylvania.

---

[1] After the parties had submitted their papers in support of their respective motions and in opposition to each other's motions, Defendant raised the issue of whether Plaintiff's counsel should be permitted to continue to represent Plaintiff in this case because, in his role as corporate counsel, he might be a material witness.  *See* Dkt. No. 41, Defendant's Counsel's Letter to the Court dated May 11, 2006, at 2.  Plaintiff's counsel filed a letter with the Court in which he responded to Defendant's allegations.  *See* Dkt. No. 42, Plaintiff's Counsel's Letter to the Court dated May 16, 2006, at 1.

After receiving both letters, the Court issued a Text Order in which it directed Defendant to file a letter brief setting forth the specific reasons why the Court should disqualify Plaintiff's counsel and in which it also directed Plaintiff's counsel to file a letter brief in response.

At the beginning of the preliminary injunction hearing on May 23, 2006, the Court advised the parties that it was denying Defendant's motion to disqualify Plaintiff's counsel without prejudice and with leave to renew.

[2] At the beginning of the preliminary injunction hearing on May 23, 2006, the Court advised the parties that it was denying Plaintiff's motion to hold Defendant in contempt of Court for failing to comply with the state court temporary restraining order.  The Court explained that the state court had issued the *ex parte* Order to Show Cause, which contained the temporary restraining order, on October 11, 2005, and had scheduled a hearing for November 1, 2005. However, the hearing was never held because, on October 21, 2005, Defendant removed the action to this Court.  Therefore, as of October 21, 2005, the date of removal, Rule 65(b)'s ten-day time limitation applicable to *ex parte* temporary restraining orders became effective.  Thus, the state court's temporary restraining order lapsed on October 31, 2005.

Although the parties dispute the circumstances under which their relationship deteriorated and ended, there is no question that Plaintiff terminated Defendant's Franchise Agreements under a "Notice of Default Under Franchise Agreement" dated July 29, 2005, and a "Notice of Termination" dated August 31, 2005.

Originally Plaintiff filed this action in state court on September 9, 2005, and sought an *ex parte* temporary restraining order, which the state court granted on October 11, 2005. Before the state court could hold a hearing regarding Plaintiff's motion, Defendant removed the action to this Court on October 21, 2005. Subsequently, both parties moved for a preliminary injunction related to the non-compete provisions of the Franchise Agreements.

The Court held a hearing regarding the parties' preliminary injunction motions on May 23, 2006, and May 26, 2006, at which time David Milman, the Chief Executive Officer of RESCUECOM Corp.; Sabreen Kabeen, Director of Franchise Support for RESCUECOM Corp.; Thomas Dachelle, a RESCUECOM Corp. franchisee in the Philadelphia and Southern New Jersey areas; and John Walsh, a technician who worked for Defendant from September 2004 through August 2005, testified in support of Plaintiff's position; and Defendant testified on his own behalf. At the close of the testimony, the Court reserved decision on the motions but instructed Defendant that he was not to provide services to any of Plaintiff's former or current customers until the Court issued its written determination regarding the pending motions. The Court further instructed Defendant to provide Plaintiff with a copy of his customer list and provided Plaintiff with an opportunity to respond to that list.

The following constitutes the Court's written determination of the pending motions.

### III. DISCUSSION

**A.     Preliminary injunction standard**

A party that seeks a preliminary injunction must demonstrate "(1) that it is likely to suffer possible irreparable injury if the injunction is not granted and (2) either (a) a likelihood of success on the merits of the case or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor." *Dunkin' Donuts Inc. v. Dowco, Inc.*, No. CIV. 5:98-CV-166, 1998 WL 160823, *2 (N.D.N.Y. Mar. 31, 1998) (citation and footnote omitted).

The "irreparable harm" prong of the preliminary injunction  requirement is the "'single most important prerequisite' for the issuance of injunctive relief and must be satisfied before the other issues in the preliminary injunction are addressed." *Id.* (quotation and other citation omitted).  The party seeking the injunctive bears the burden to "show that the irreparable harm is imminent rather than remote or speculative, and it must demonstrate that the injury is 'one incapable of being fully remedied by monetary damages.'" *Id.* (quotation omitted).  The second prong of this requirement, "concerning likelihood of success on the merits, requires examination of the parties' underlying dispute." *Id.* (citation omitted).

**B.     Irreparable injury**

Plaintiff contends that, since the termination of the Franchise Agreements, Defendant, in contravention of the non-compete provisions of these Agreements, has solicited Plaintiff's customers and has diverted some of them to his new business, which he operates from the same location in direct competition with Plaintiff's franchisees.  At the hearing, Mr. Milman testified

that, once Plaintiff loses a customer, that customer may never return and that this loss of a customer as well as the concomitant loss of good will irreparably harms Plaintiff and its franchisees in the geographic area where Defendant has established his new business.  In addition, Mr. Milman, as well as Mr. Walsh, testified that Defendant had sent out a flyer to Plaintiff's customers stating, in effect, that Plaintiff was out of business and that Defendant's business was taking its place in the market.

"Generally, when a party violates a non-compete clause, the resulting loss of client relationships and customer good will built up over the years constitutes irreparable harm." *Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323 F. Supp. 2d 525, 532 (S.D.N.Y. 2004). Moreover, as the Second Circuit has noted, it is "very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come." *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69-70 (2d Cir. 1999).  Finally, if a franchisee is permitted to avoid its reasonable non-compete obligations, not only the franchisor's good will but the franchise system itself is endangered. *See Jiffy Lube Int'l, Inc. v. Weiss Bros., Inc*, 834 F. Supp. 683, 693 (D.N.J. 1993).

In this case, the evidence demonstrates that Defendant has successfully diverted at least five of Plaintiff's former customers to his new business and has attempted to divert others; such actions undeniably threaten to cause Plaintiff irreparable harm.  These customers had a business relationship with Plaintiff which Defendant's actions have irreparably damaged.  Moreover, at least to the extent that his actions have been successful, Defendant has prevented Plaintiff from transferring the customer relationship that Defendant had developed with Plaintiff's assistance while he was a franchisee to one or more of Plaintiff's other franchisees, such as Mr. Dachelle,

-5-

who operate their franchises in the same geographic area.  Finally, because Defendant's customer

list makes clear that he has successfully solicited and provided services to some of Plaintiff's

former customers, Plaintiff has demonstrated that it has already suffered irreparable harm and

will continue to suffer such harm, absent injunctive relief.


**C.     Likelihood of success**

        "It is well established under New York law that 'negative covenants restricting

competition are enforceable only to the extent that they satisfy the overriding requirement of

reasonableness.'"  *Johnson Controls, Inc.*, 323 F. Supp. 2d at 533 (quotation and other citation

omitted).  Thus, "New York . . . courts will enforce a non-compete clause between business

entities only where it protects a legitimate business interest and where its terms are reasonable

both in time and geographic scope."  *Servicemaster Residential/Commercial Servs., L.P. v.

Westchester Cleaning Servs., Inc.*, No. 01 Civ. 2229, 2001 WL 396520, *3 (S.D.N.Y. Apr. 19,

2001).  Moreover, in the context of a franchisor/franchisee relationship, "[t]here is a recognized

danger that former franchisees will use the knowledge that they have gained from the franchisor

to serve its former customers, and that continued operation under a different name may confuse

customers and thereby damage the good will of the franchisor."  *Id.* (citing *Jiffy Lube Int'l, Inc. v.

Weiss Bros., Inc.*, 834 F. Supp. 683, 691-92 (D.N.J. 1993) (upholding ten-month, five-mile

restriction on rapid lube operation); *Economou v. Physicians Weight Loss Ctrs.*, 756 F. Supp.

1024, 1032 (N.D. Ohio 1991) (upholding one-year, fifty-mile restriction on diet center)).

        Plaintiff claims that it is likely to succeed on the merits of its claim that Defendant has

violated the non-compete provisions of the Franchise Agreements and that these provisions are

reasonable.[3]  Moreover, Plaintiff asserts that it provided Defendant with specialized training

---

[3] The non-compete provisions of the Franchise Agreements to which Defendant and Plaintiff are signatories provide, in pertinent part, that

[f]or a period of two (2) years after the expiration or termination of this Agreement, regardless of the cause of termination, Franchisee shall not:

1.      Either directly or indirectly, for himself, or through, on behalf of or in conjunction with any person, persons, partnership, limited liability company, corporation or other entity, own, maintain, engage in, be employed in, consult with or have any interest in any business engaged primarily in offering and providing computer consulting and repair services or Internet services that are the same as, or similar to, the type sold in the System:

            a.      Within the Metropolitan Statistical Area, as that term is defined by the United States Census Bureau ("MSA") in which the Franchised Business is located; or

            b.      Within the county that the Franchised Business is located in; or

            c.      Within a radius of ten (10) miles of the Franchised Business; or

            d.      Within a radius of ten (10) miles of the location of any other business using the System, whether franchised or owned by Franchisor.

2.      Directly or indirectly hire or engage any individual or employee or seek to employ any individual who is at that time or at any time during the one (1) year period prior to the date of the Franchisee's termination of this Agreement, a franchisee of Franchisor, employed by Franchisor, or employed by any other franchisee of Franchisor, or otherwise directly or indirectly induce or seek to induce such person to leave his or her employment thereat whether

(continued...)

-7-

about how to run a successful computer sales and services business based upon methods that it

had developed over a number of years.  Finally, Plaintiff argues that, if the Court does not

enforce these non-compete provisions, it will be more difficult for Plaintiff to attract new

franchisees and to keep its current franchisees because of the increased competition in the area.

    On the other hand, Defendant contends that Plaintiff did not provide him with any special

training and that he had many years of experience in the computer repair and consulting business

---

[3](...continued)

> for or on behalf of Franchisee or for any entity in which
> Franchisee shall have a direct or indirect interest, or any
> Related Entity, whether as a proprietor, partner, co-
> venturer, financier, investor or stockholder, director,
> officer, employer, employee, servant, agent, representative,
> or otherwise.

> 3.  Directly or indirectly accept employment with any customer
> or client of Franchisor or any Related Entity of said
> customer or client.

> 4.  Divert or attempt to divert any business or customer of the
> Franchised Business to any competitor, by direct or indirect
> inducement or otherwise, or do or perform, directly or
> indirectly, any other act injurious or prejudicial to the
> goodwill associated with the Marks or the System.

> F.  . . . If all or any portion of a covenant in this paragraph XVI is held
> unreasonable or unenforceable by a court or agency having valid
> jurisdiction in an unappealed final decision to which Franchisor is a party,
> Franchisee shall be bound by any lesser covenant subsumed within the
> terms of such covenant that imposes the maximum duty permitted by law,
> as if the resulting covenant were separately stated in and made a part of
> this paragraph XVI.

See Affidavit of David A. Milman, dated April 4, 2006, at Exhibit "A," Franchise Agreement, at
¶ XVI.E, XVI.F.

prior to becoming a franchisee of Plaintiff.[4]  Plaintiff acknowledges, however, the he had no experience running a small business prior to that time.  Moreover, he asserts that not only does Plaintiff have other franchisees in the same geographic area but that there are also a number of competing businesses that already exist in the same area.  Thus, he argues that Plaintiff's interest in protecting its business system and its ability to have other franchisees operate in the same area is outweighed by the harm to him if he is unable to establish a computer service business within the same geographic area for two years.

    Although, under certain circumstances, Defendant's arguments might have some merit, Defendant cannot reasonably dispute that, when Plaintiff provided him with training and manuals pertaining to the best methods for operating a successful computer sales and services business – skills which, as noted, he acknowledges he did not have prior to becoming one of Plaintiff's franchisees – Plaintiff extended to Defendant the knowledge and ability to launch and successfully operate a computer sales and services business, which Plaintiff is now using to establish his own business.  Nor does Defendant dispute that Plaintiff developed these business tools over a number of years through trial and error.

    In addition, the testimony at the hearing, as well as Defendant's customer list, demonstrates that Defendant has violated at least some of the non-compete provisions: (1) after Plaintiff terminated the Franchise Agreements, Defendant started his own business, Genietech Computer, at the same location, in direct competition with Plaintiff's franchisees; (2) Defendant

---

[4] Defendant also contends that the Court should not allow Plaintiff to enforce these Franchise Agreements because Plaintiff wrongfully terminated and, thus, breached these Agreements.

approached John Walsh, who had worked for him when he was one of Plaintiff's franchisees and for Thomas Dachille, another of Plaintiff's franchisees, about working as a technician for him in his new business; and (3) Defendant diverted at least five of Plaintiff's former customers[5] and may have attempted to divert others to his new business.

For all these reasons, the Court concludes that Plaintiff has established a likelihood of success on the merits of its claims.  However, because at this stage of the litigation, the Court cannot determine whether all of the non-compete provisions are reasonable, the Court limits the injunction to the following terms: "during the pendency of this action, Defendant is enjoined from soliciting business from or providing computer-related sales and services to any of Plaintiff's current or former customers."

### III. CONCLUSION

After reviewing the entire file in this matter, the testimony of the witnesses at the preliminary injunction hearing, and the parties' submissions and oral arguments, as well as the applicable law, and for the reasons stated herein and at the hearing, the Court hereby

---

[5] Of the thirty-one customers that Defendant listed on his Customer List, he acknowledges that five of them are Plaintiff's former customers.  Four of these customers are located in New Jersey and one is located in Pennsylvania.  In response to this Customer List, Plaintiff asserts that, with respect to those customers who are not designated as "Former Rescuecom Customers," "the list does not contain sufficient detail for [Plaintiff] to check the remainder [of the customers listed]."  *See* Dkt. No. 50.

The Court also notes that this Customer List conflicts with Defendant's testimony at the hearing that he currently only had twenty or twenty-five customers.  In fact, each time Defendant was asked how many customers he had he gave a different answer.  This is only one example of Defendant's seeming inability or reluctance to provide truthful answers to the questions he was asked at the hearing, which leads the Court to conclude that his testimony, as a whole, was incredible.

**ORDERS** that Plaintiff's motion to hold Defendant in contempt of Court for violating the state court temporary restraining order is **DENIED**; and the Court further

**ORDERS** that Defendant's motion to disqualify Plaintiff's attorney is **DENIED WITHOUT PREJUDICE**; and the Court further

**ORDERS** that Plaintiff's motion for a preliminary injunction is **GRANTED** with the following conditions: "during the pendency of this action, Defendant is enjoined from soliciting business from or providing computer-related sales and services to any of Plaintiff's current or former customers;" and such preliminary injunction shall be entered upon Plaintiff's posting of a security bond in the amount of **$25,000** with the Clerk of the Court pursuant to Rule 65(c) of the Federal Rules of Civil Procedure; and the Court further

**ORDERS** that Defendant's motion for a preliminary injunction is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated: June 20, 2006
        Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge

-11-